1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10   LARRY GIBSON,

11              Petitioner,                No. 2: 11-cv-0555 GEB KJN P

12        vs.

13   JAMES HARTLEY,

14              Respondent.            FINDINGS AND RECOMMENDATIONS

15   _____/

16   I.  Introduction

17              Petitioner is a state prisoner, proceeding without counsel, with a petition for writ

18   of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his 2008 conviction for

19   elder abuse (Cal. Penal Code § 368(b)(1)) and assault likely to produce great bodily injury (Cal.

20   Penal Code § 245(a)(1)), with the special allegations that the victim suffered great bodily injury

21   (Cal. Penal Code § 368(b)(2)), and that defendant personally inflicted the injury (Cal. Penal Code

22   § 12022.7(c).  Petitioner is serving a sentence of eight years.

23              This action is proceeding on the original petition filed February 11, 2011, and the

24   supplemental petition filed June 13, 2011.  (Dkt. Nos. 1 and 31.)   Petitioner raises the following

25   claims: 1) ineffective assistance of counsel (two claims); 2) juror misconduct; 3) denial of

26   counsel at probation hearing; 4) untimely "return" by the state; 5) judicial misconduct; 6) actual

innocence; 7) unconstitutional sentence; and 8) suppressed evidence released to the jury.

In the original petition, petitioner raised grounds 1-5 set forth above.  Petitioner also stated that ground 6, neither identified nor described, had not been presented to the California Supreme Court.  On March 11, 2011, the undersigned ordered petitioner to file a short declaration stating whether he intended to proceed only on the five exhausted claims, or whether he intended to raise a sixth unexhausted claim.

On March 24, 2011, petitioner filed a letter stating the he intended to proceed with the five exhausted claims raised in the original petition.  Accordingly, on March 31, 2011, the undersigned ordered respondent to file a response to the five exhausted claims contained in the petition.

In the answer to the original petition, filed May 31, 2011, respondent addresses claims 1-5.  However, respondent also addresses a sixth claim.  Respondent states that in this sixth claim, petitioner alleges that suppressed evidence was released to the jury.  Respondent also states that this claim has been presented to the California Supreme Court.  Because respondent represents that this claim six is exhausted, the undersigned herein addresses the merits of this claim.  On June 27, 2012, respondent filed a supplemental answer addressing the claims alleging actual innocence and unconstitutional sentence, raised in the supplemental petition.

After carefully considering the record, the undersigned recommends that the petition be denied.

II.  Standards for a Writ of Habeas Corpus

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States.  28 U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation or application of state law.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000).

////

1    Federal habeas corpus relief is not available for any claim decided on the merits in

2  state court proceedings unless the state court's adjudication of the claim:

3       (1) resulted in a decision that was contrary to, or involved an
        unreasonable application of, clearly established Federal law, as
4       determined by the Supreme Court of the United States; or

5       (2) resulted in a decision that was based on an unreasonable
        determination of the facts in light of the evidence presented in the
6       State court proceeding.

7  28 U.S.C. § 2254(d).

8    Under section 2254(d)(1), a state court decision is "contrary to" clearly

9  established United States Supreme Court precedents if it applies a rule that contradicts the

10  governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially

11  indistinguishable from a decision of the  Supreme Court and nevertheless arrives at different

12  result.  Early v. Packer, 537 U.S. 3, 7 (2002) (citing Williams v. Taylor, 529 U.S. 362, 405-06

13  (2000)).

14    Under the  "unreasonable application" clause of section 2254(d)(1), a federal

15  habeas court may grant the writ if the state court identifies the correct governing legal principle

16  from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the

17  prisoner's case.  Williams, 529 U.S. at 413.  A federal habeas court "may not issue the writ

18  simply because that court concludes in its independent judgment that the relevant state-court

19  decision applied clearly established federal law erroneously or incorrectly.  Rather, that

20  application must also be unreasonable."  Id. at 412; see also Lockyer v. Andrade, 538 U.S. 63, 75

21  (2003) (it is "not enough that a federal habeas court, in its independent review of the legal

22  question, is left with a 'firm conviction' that the state court was 'erroneous.'") (internal citations

23  omitted).  "A state court's determination that a claim lacks merit precludes federal habeas relief

24  so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."

25  Harrington v. Richter, 131 S. Ct. 770, 786 (2011).

26  ////

1    The court looks to the last reasoned state court decision as the basis for the state

2    court judgment.  Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002).  If there is no reasoned

3    decision, "and the state court has denied relief, it may be presumed that the state court

4    adjudicated the claim on the merits in the absence of any indication or state-law procedural

5    principles to the contrary."  Harrington, 131 S. Ct. at 784-85.  That presumption may be

6    overcome by a showing that "there is reason to think some other explanation for the state court's

7    decision is more likely."  Id. at 785 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)).

8    Where the state court reaches a decision on the merits but provides no reasoning

9    to support its conclusion, the federal court conducts an independent review of the record.

10   "Independent review of the record is not de novo review of the constitutional issue, but rather,

11   the only method by which we can determine whether a silent state court decision is objectively

12   unreasonable."  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).  Where no reasoned

13   decision is available, the habeas petitioner has the burden of "showing there was no reasonable

14   basis for the state court to deny relief."  Harrington, 131 S. Ct. at 784.  "[A] habeas court must

15   determine what arguments or theories supported or, . . . could have supported, the state court's

16   decision; and then it must ask whether it is possible fairminded jurists could disagree that those

17   arguments or theories are inconsistent with the holding in a prior decision of this Court."  Id. at

18   786.

19   III.  Background

20   Respondent's answer contains a "statement of facts."  After independently

21   reviewing the record, the undersigned finds this summary to be accurate and substantially adopts

22   it below.

23   At around noon on March 30, 2007, petitioner and his mother, Patricia Gibson,

24   aged seventy-six, had returned home from petitioner's appointment at the Veteran's Hospital.

25   (Respondent's Lodged Document 1 at 63.)  Petitioner was living with his mother at the time.

26   (Id.)  As Mrs. Gibson was parking the car, she rolled up the windows.  (Id. at 64.)  Petitioner's

1   fingers were in one of the windows and got caught.  (Id.)  Petitioner began yelling at his mother.

2   (Id.)  She opened the window and released petitioner's fingers.  (Id.)  Petitioner ran into the

3   house.  (Id.)

4           As Mrs. Gibson walked toward the front door, she heard petitioner screaming.

5   (Id. at 65.)  She thought he was telling her not to come in.  (Id. at 66.)  When she got into the

6   door frame, petitioner ran past her.  (Id.)  Petitioner pushed her as he ran past.  (Id.)  Mrs. Gibson

7   fell down.  (Id. at 66-67.)

8           A neighbor from across the street came outside and saw petitioner kicking Mrs.

9   Gibson.  (Id. at 119.)  The neighbor testified that she saw Mrs. Gibson on the ground and it

10   looked like petitioner was reaching down with his hand to help her get up.  (Id. at 120.)  Instead,

11   petitioner kicked Mrs. Gibson.  (Id.)

12           Petitioner denied the allegations and denied kicking his mother.  (Id. at 173-88.)

13   Petitioner admitted that in 2003, he was involved in an incident with his mother.  In this incident,

14   he pulled his mother against the couch, i.e., restrained her, during an argument regarding food.

15   (Id. at 174-75.)  Petitioner testified that she tried to make him eat a tuna fish sandwich, which he

16   claimed he could not eat due to having colon cancer.  (Id.)  Petitioner admitted to pleading no

17   contest to misdemeanor assault regarding that incident.  (Id.)

18   VI.  Discussion

19           A.  Alleged Ineffective Assistance of Counsel

20           *Legal Standard*

21           The test for demonstrating ineffective assistance of counsel is set forth in

22   Strickland v. Washington, 466 U.S. 668 (1984).  First, a petitioner must show that, considering

23   all the circumstances, counsel's performance fell below an objective standard of reasonableness.

24   Id. at 688.  To this end, the petitioner must identify the acts or omissions that are alleged not to

25   have been the result of reasonable professional judgment.  Id. at 690.  The federal court must then

26   determine whether in light of all the circumstances, the identified acts or omissions were outside

the wide range of professional competent assistance.  Id.  "We strongly presume that counsel's

conduct was within the wide range of reasonable assistance, and that he exercised acceptable

professional judgment in all significant decisions made."  Hughes v. Borg, 898 F.2d 695, 702

(9th Cir. 1990) (citing Strickland, 466 U.S. at 689).

Second, a petitioner must affirmatively prove prejudice.  Strickland, 466 U.S. at

693.  Prejudice is found where "there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different."  Id. at 694.  A

reasonable probability is "a probability sufficient to undermine confidence in the outcome."  Id.

In extraordinary cases, ineffective assistance of counsel claims are evaluated

based on a fundamental fairness standard.  Williams v. Taylor , 529 U.S. 362, 391-93 (2000),

(citing Lockhart v. Fretwell, 506 U.S. 364 (1993)).

The Supreme Court has emphasized the importance of giving deference

to trial counsel's decisions, especially in the AEDPA context:

> In Strickland we said that "[j]udicial scrutiny of a counsel's
> performance must be highly deferential" and that "every effort
> [must] be made to eliminate the distorting effects of hindsight, to
> reconstruct the circumstances of counsel's challenged conduct, and
> to evaluate the conduct from counsel's perspective at the time."
> 466 U.S. at 689.  Thus, even when a court is presented with an
> ineffective-assistance claim not subject to § 2254(d)(1) deference,
> a [petitioner] must overcome the "presumption that, under the
> circumstances, the challenged action 'might be considered sound
> trial strategy.'"  Ibid. (quoting Michel v. Louisiana, 350 U.S. 91,
> 101 (1955)).
>
> For [petitioner] to succeed, however, he must do more than show
> that he would have satisfied Strickland's test if his claim were
> being analyzed in the first instance, because under § 2254(d)(1), it
> is not enough to convince a federal habeas court that, in its
> independent judgment, the state-court decision applied Strickland
> incorrectly.  See Williams, supra, at 411.[1]  Rather, he must show
> that the [ ]Court of Appeals applied Strickland to the facts of his
> case in an objectively unreasonable manner.

---

[1]  This internal citation should be corrected to Williams v. Kaiser, 323 U.S. 471, 477
(1945).

1    Bell v. Cone, 535 U.S. 685, 698-99 (2002).

2              *Claim One*

3              In his first claim of ineffective assistance of counsel, petitioner alleges that, "I told

4    my trial attorney what happened before trial and he told me my story seemed unbelievable and to

5    go with what he said instead." (Dkt. 1 at 4.)  Petitioner offers no further briefing in support of

6    this claim in either the petition or the reply to the answer.

7              In the answer, respondent alleges that this claim is not exhausted but may be

8    addressed because it lacks merit.  See 28 U.S.C. § 2254(b)(2) (court may deny a habeas corpus

9    petition notwithstanding the failure to exhaust state court remedies).  Because this claims lacks

10   merit, the undersigned may address it regardless of whether it is exhausted.

11             As noted by respondent in the answer, petitioner has presented no factual

12   allegations to support this claim.  He has not specified what he told his attorney or what his

13   attorney allegedly told him to say.  "Conclusory allegations which are not supported by a

14   statement of specific facts do not warrant habeas relief."  James v. Borg, 24 F.3d 20, 26 (9th Cir.

15   1994).  Accordingly, this claim should be denied.

16             *Claim Two*

17             In claim two, petitioner alleges that his attorney was ineffective for failing to

18   follow up on claims of juror misconduct brought to his attention by petitioner.  (Dkt. 1 at 4.)

19   Petitioner raised this claim in a habeas corpus petition filed in the Sacramento County Superior

20   Court.  The Superior Court denied this claim in a reasoned opinion.  (Respondent's Lodged

21   Document No. 11.)  Petitioner raised this claim in a habeas corpus petition he filed in the

22   California Supreme Court, which the California Supreme Court summarily denied.

23   (Respondent's Lodged Document 14.)  Accordingly, given the procedural history, the

24   Sacramento County Superior Court's order on habeas is the last reasoned decision and should be

25   given deference.  28 U.S.C. § 2254(d).

26   ////

1          The Sacramento County Superior Court denied this claim for the reasons stated

2   herein:

3          Petitioner alleged that prior to the time that deliberations began, he
           (petitioner) overheard one juror say to another person in the hall
4          that petitioner was guilty and that he looked like a "psycho."  He
           says he told his attorney about this and that his attorney did
5          nothing.

6          In her return, the prosecutor attached a declaration by petitioner's
           trial attorney, who reports that he has no recollection that petitioner
7          reported this to him.  He says that if he had received such a report,
           it would have been incumbent upon him to report juror misconduct
8          to the court and that he would have done so at the next opportunity.
           He also reports that at one point in the courtroom petitioner told
9          him that a juror was looking at him as if he were guilty, but
           counsel says he did not see such a look himself.

10
           On the basis of these facts, the prosecutor argued that there was no
11         misconduct.  She also pointed out that no one else reported
           overhearing such a conversation.  Finally, the prosecutor argued
12         that even if the incident had been reported, trial counsel could have
           made a tactical decision to ignore it.

13
           Petitioner's counsel filed a traverse in which he argued that
14         petitioner was entitled to an unbiased jury.  He also submitted a
           further declaration from petitioner, who states that he tried to tell
15         the judge about the incident himself, but that the judge told him to
           consult with his attorney and let the attorney speak for him.  He
16         says that this attorney said he did not recall being told of the
           incident, not that the incident did not occur.  Petitioner repeated
17         what he said initially, which was that the incident occurred, that he
           told his attorney about it and that the attorney failed to call it to the
18         Court's attention.

19         In evaluating a claim of ineffective assistance of counsel, the court
           applies a two-part test.
20
           "[A] defendant must first show counsel's performance was
21         'deficient' because his 'representation fell below an objective
           standard of reasonableness ... under prevailing professional
22         norms.'" (In re Harris (1993) 5 Cal.4th 813, 832-833, citing
           Strickland v. Washington (1984) 466 U.S. 668 and People v. Pope
23         (1979) 23 Cal.3d 412; see also In re Scott (2003) 29 Cal.4th 783,
           811-812.)
24
           In applying the first part of the test, courts are directed to be highly
25         deferential.  A petitioner claiming ineffective assistance must
           overcome a presumption that, considering all of the circumstances,
26         counsel's actions "might be considered sound trial strategy."

8

1       (Strickland, supra, 466 U.S. at p. 689.)

2       In the second part of the test, a petitioner "must also show
        prejudice flowing from counsel's performance or lack thereof.
3       [cites omitted] Prejudice is shown when there is a 'reasonable
        probability that, but for counsel's unprofessional errors, the result
4       of the proceeding would have been different.  A reasonable
        probability is a probability sufficient to undermine confidence in
5       the outcome.' [cites omitted]" (Ibid.)

6       Finally, courts are advised that it is frequently easier to resolve an
        ineffective assistance claim by looking first at the issue of
7       prejudice; if none is established, then it will be unnecessary to
        consider counsel's performance.  (In re Fields (1990) 51 Cal.3d
8       1063, 1077.)

9       The court finds that the declaration from petitioner's attorney
        provides the most credible account of the proceedings.  Counsel
10      did not recall being told by petitioner about the incident even
        though the language petitioner reported hearing was memorable.
11      Petitioner's attorney stated that if he had been told about an
        incident such as this, he would immediately have reported it to the
12      court.  The attorney recalls such incidents well; he reported a
        separate occasion in the courtroom in which his client whispered
13      that a juror was looking at him as if he were guilty.  Counsel
        observed the juror but did not see what his client did.  On the basis
14      of the attorney's declaration, the court finds that no report
        regarding juror misconduct was made.  Petitioner's contradictory
15      account is not persuasive.

16      Because counsel received no information about juror misconduct,
        he had no duty to act and cannot be ineffective in regard to this
17      matter.  It was also correct of the court to advise petitioner that the
        proper way to bring any issue to the court's attention was to report
18      it to his attorney.  The court has no need to address the claim that
        failure to act could be tactical.

19

20  (Respondent's Lodged Document 11 at 2-5.)

21          The denial of this claim of alleged ineffective assistance of counsel by the

22  Sacramento County Superior Court was not an unreasonable application of clearly established

23  Supreme Court authority.  As noted by respondent, the Superior Court properly applied the two-

24  pronged test set forth in Strickland, supra.  After reviewing the declarations by petitioner and trial

25  counsel, the Superior Court reasonably concluded that trial counsel's declaration was more

26  credible.  This court must defer to the trial court's reasonable credibility finding because

                                              9

1  petitioner has presented no clear and convincing evidence to rebut the Superior Court's

2  reasonable determination that counsel received no information about juror misconduct.  28

3  U.S.C. § 2254(d), (e)(1); <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340 (2003).

4          The Superior Court found that because trial counsel received no information

5  regarding juror misconduct, he had no duty to act.  Under these circumstances, trial counsel did

6  not act unreasonably.  This finding was not an unreasonable application of clearly established

7  Supreme Court authority.  Accordingly, this claim should be denied.

8          B.  <u>Juror Misconduct</u>

9          Petitioner's juror misconduct claim is based on the same facts as the related

10  ineffective assistance of counsel claim discussed above.  Petitioner is claiming that the juror who

11  made the alleged comments was biased against him.

12          The Sixth Amendment guarantees to the criminally accused a fair trial by a panel

13  of impartial jurors. U.S. Const. amend. VI; <u>see</u> <u>Irvin v. Dowd</u>, 366 U.S. 717, 722 (1961).  "Even

14  if only one juror is unduly biased or prejudiced, the defendant is denied his constitutional right to

15  an impartial jury."  <u>Tinsley v. Borg</u>, 895 F.2d 520, 523–24 (9th Cir. 1990) (internal quotations

16  omitted).  Due process requires that the defendant have a jury capable and willing to decide the

17  case solely on the evidence before it and a trial judge ever watchful to prevent prejudicial

18  occurrences and to determine the effect of such occurrences when they happen.  <u>Smith v.</u>

19  <u>Phillips</u>, 455 U.S. 209, 217 (1982).

20          Due process does not require, however, that the trial court hold a hearing every

21  time there is evidence or a question of juror bias.  <u>Tracey v. Palmateer</u>, 341 F.3d 1037, 1044 (9th

22  Cir. 2003).  Rather, a case-by-case determination is appropriate.  "[I]n determining whether a

23  hearing must be held, the court must consider the content of the allegations, the seriousness of

24  the alleged misconduct or bias, and the credibility of the source."  <u>United States v. Angulo</u>, 4

25  F.3d 843, 847 (9th Cir. 1993).

26  ////

1    In rejecting petitioner's related ineffective assistance of counsel claim, the

2  Superior Court found that petitioner did not tell his lawyer about the allegedly improper

3  comments made by the juror.  In making this finding, the Superior Court implicitly found that

4  petitioner did not actually hear a juror make the alleged comments.   Petitioner has presented no

5  clear and convincing evidence to rebut the Superior Court's finding that petitioner, in essence,

6  fabricated his claim that he heard the comments.  Petitioner has not, for example, presented the

7  declaration of the other juror to whom the comments were allegedly made.[2]

8    Because petitioner has presented no clear and convincing evidence to rebut the

9  Superior Court's determination that petitioner did not actually hear the at-issue comments, this

10  court must defer to the trial court's credibility finding.  Accordingly, this claim should be denied.

11    C.  Denial of Counsel at Probation Report Hearing

12    Petitioner alleges that he did not have counsel with him at his presentence

13  interview with the probation officer.  (Dkt. 1 at 5.)  Petitioner raised this claim in a habeas

14  petition filed in the Superior Court.  (See Respondent's Lodged Document 14 (copy of order by

15  Superior Court denying petition raising this claim attached as exhibit to petition filed in

16  California Supreme Court).)

17    In rejecting this claim, the Superior Court stated, "He also said that he had no

18  counsel present during the probation report hearing...In addition, the only probation report

19  hearing is the sentencing hearing, at which counsel was present." (Id., Superior Court order at 2-

20  3.)

21    As noted by respondent in the answer, petitioner has no constitutional right to

22  counsel at a presentence interview conducted by a probation officer.  Baumann v. United States,

23  692 F.2d 565 (9th Cir. 1982) (a pre-sentence interview of a person convicted of a non-capital

24

25    [2]  In his declaration submitted in support of the petition filed in the Superior Court,
petitioner stated that he heard one of the jurors make the comments to one of her fellow jurors.
26  (Respondent's lodged document no. 10.)

federal offense is not a critical stage at which counsel's presence or advice is necessary to protect the defendant's right to a fair trial).

The denial of this claim by the California courts was not an unreasonable application of clearly established Supreme Court authority.  Accordingly, this claim should be denied.

### D.  Alleged Untimely Return

Petitioner alleges that the prosecution did not file a timely return.  (Dkt. 1 at 5.) In particular, petitioner claims that the prosecutor did not file a timely return in response to the Superior Court's order to show cause issued in his state habeas action.  (Id.)

As noted by respondent in the answer, errors in the state post-conviction review process are not addressable through federal habeas corpus proceedings.  Gerlaugh v. Stewart, 129 F.3d 1027, 1045 (9th Cir. 1997).  For this reason, petitioner's claim that the state did not file a timely response to the show cause order issued in his state habeas action is without merit. Accordingly, this claim should be denied.

### E.  Alleged Judicial Misconduct

*Comments by the Court*

Petitioner alleges that the trial court committed misconduct by stating, during the trial, "in the current event it appears that Mr. Gibson got annoyed at something his mother did and shoved her." (Dkt. No. 1 at 6.)  Respondent argues that this claim is procedurally barred.

Petitioner raised this claim of judicial misconduct in a habeas corpus petition filed in the Superior Court.  (Respondent's Lodged Document No. 6 at 3.)  The Superior Court denied this claim on grounds that it should have been raised on direct appeal, citing In re Harris, 5 Cal.4th 813, 829 (1993) and In re Dixon, 41 Cal.2d 756, 759 (1953).  (Respondent's Lodged Document No. 7 at 2.)  The Superior Court also rejected this claim on the merits, finding that the transcript from the trial failed to support this claim.  (Id. at 3.)  The California Supreme Court denied this claim without comment or citation.  (Respondent's Lodged Document No. 14.)

1    Where the state court decision rests on clearly alternate grounds, one invoking a

2 state procedural bar and the other addressing the merits, the state procedural ground is still

3 sufficiently independent to preclude habeas review.  See Bargas v. Burns, 179 F.3d 1207, 1214

4 (9th Cir. 1999).  Although the Superior Court rejected this claim both on the merits and on

5 procedural grounds, the undersigned finds that the instant claim is procedurally barred for the

6 reasons stated herein.

7    When a state procedural bar is applied by a state trial court and relief is summarily

8 denied by the state's higher courts, a federal court looks to the last reasoned state court decision

9 as the basis for the state court judgment.  Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)

10 ("Where, as here, the last reasoned opinion on the claim explicitly imposes a procedural default,

11 we will presume that a later decision rejecting the claim did not silently disregard that bar and

12 consider the merits.").  Accordingly, the undersigned looks through the California Supreme

13 Court's summary denial of petitioner's habeas petition to the order by the Superior Court finding

14 the instant claim procedurally barred.

15    As a general rule, "[a] federal habeas court will not review a claim rejected by a

16 state court 'if the decision of [the state] court rests on a state law ground that is independent of

17 the federal question and adequate to support the judgment."  Walker v. Martin, 131 S. Ct. 1120,

18 1127 (2011) (quoting Beard v. Kindler, 130 S. Ct. 612, 615 (2009).)  Procedural default can only

19 block a claim from federal habeas review if the state court, "clearly and expressly states that its

20 judgment rests on a state procedural bar."  Harris, 489 U.S. at 263.  This means that the state

21 court must have specifically stated that it was denying relief on a procedural ground.  See Ylst v.

22 Nunnemaker, 501 U.S. 797, 803 (1991); Acosta–Huerta v. Estelle, 7 F.3d 139, 142 (9th Cir.

23 1993).

24    In order for a state procedural rule to be found independent, the state law basis for

25 the decision must not be interwoven with federal law.  Cooper v. Neven, 641 F.3d 322, 332 (9th

26 Cir. 2011); Bennett v. Mueller, 322 F.3d 573, 581 (9th Cir. 2003).  To be deemed adequate, the

1   rule must be well established and consistently applied.  <u>Walker</u>, 131 S. Ct. at 1128; <u>Ford v.</u>

2   <u>Georgia</u>, 498 U.S. 411, 424 (1991) (a state rule for these purposes is only "adequate" if it is

3   "firmly established and regularly followed").  Even if the state rule is independent and adequate,

4   the claims may be reviewed by the federal court if the petitioner can show: (1) cause for the

5   default and actual prejudice as a result of the alleged violation of federal law; or (2) that failure to

6   consider the claims will result in a fundamental miscarriage of justice.  <u>Edwards v. Carpenter</u>,

7   529 U.S. 446, 451 (2000).

8          It has been determined by the Ninth Circuit that prior to 1998 the <u>Dixon</u> rule, i.e.,

9   that habeas cannot substitute for an appeal, was not independent of federal law.  <u>See</u> <u>Park v.</u>

10  <u>California</u>, 202 F.3d 1146, 1152–53 (9th Cir. 2000).  In <u>Park</u>, the Ninth Circuit reasoned that

11  application of the <u>Dixon</u> rule necessarily was interwoven with federal law because there was a

12  fundamental constitutional error exception to the <u>Dixon</u> rule under state law.  <u>Id.</u> at 1152–53.

13  However, in <u>In re Robbins</u>, 18 Cal.4th 770 (1998), the California Supreme Court held "that

14  henceforth California courts would no longer determine whether an error alleged in a state

15  petition constituted a federal constitutional violation."  <u>Bennett</u>, 322 F.3d at 581.  In <u>Bennett</u>, the

16  Ninth Circuit stated, "we respect the California Supreme Court's sovereign right to interpret its

17  state constitution independent of federal law" and, as a result, found that California's

18  untimeliness rule was an independent state ground.  <u>Id.</u> at 581–83.

19         Thus, under these particular circumstances, it appears that the Superior Court's

20  invocation of <u>Dixon</u> in November of 2009 in the instant case, after <u>Robbins</u> was decided, could

21  serve as an independent state ground.  <u>Id.</u> at 582–83; <u>see also</u> <u>Park</u>, 202 F.3d at 1153 n.4.  In this

22  regard, "there [is no] existing Ninth Circuit precedent holding that the <u>Dixon</u> rule is inadequate."

23  <u>Cree v. Sisto</u>, 2011 WL 66253, at *2 (E.D. Cal. Jan 7, 2011) (Kozinski, J., sitting by

24  designation). <u>See also</u> <u>Cantrell v. Evans</u>, 2010 WL 1170063, at *13–14 (E.D.Cal. Mar. 24, 2010)

25  (McKeown, J., sitting by designation) ("[T]he procedural bar established by <u>In re Dixon</u> .... is an

26  adequate and independent state law reason for refusing to reach the merits ....")

14

Because the state court's reliance on <u>Dixon</u> in denying the instant claim is an independent and adequate state ground, this claim is procedurally defaulted unless petitioner can show cause for the default and actual prejudice as a result of the alleged violation of federal law or that failure to consider the claims will result in a fundamental miscarriage of justice. <u>See</u> <u>Coleman</u>, 501 U.S. at 750.

As noted above, the Superior Court found no evidence in the record to support the instant claim. Attached to the petition is a copy of the reporter's transcript where the Superior Court made the allegedly improper comments. (Dkt. No. 1 at 8; RT at 12.) The Superior Court made these comments, outside the presence of the jury, while addressing whether evidence of petitioner's prior incident involving his mother should be admitted. (<u>Id.</u>) Because the jury did not hear any of the at-issue comments, petitioner has demonstrated  neither prejudice nor a fundamental miscarriage of justice. These comments, in the context they were made, also do not demonstrate any improper bias by the court against petitioner. Accordingly, this claim should be denied because it is procedurally barred.

*Alleged Order Regarding Army Jacket*

Petitioner alleges that the trial court committed misconduct by prohibiting him from wearing his Army jacket in court. This claim has not been presented to the California Supreme Court. Nevertheless, because this claim is without merit, it will be addressed herein. 28 U.S.C. § 2254(b)(2). The background to this claim is as follows.

Prior to trial, the prosecutor moved to exclude evidence that petitioner was in the military and injured while in the military and that on the date of the incident, he and his mother were driving home from a Veterans Administration hospital. (RT at 16-17.) The prosecutor stated that she was concerned that the jury might speculate as to whether petitioner had been in combat "and if he has some mental – I think it's a sympathy thing, and the jury may consider it and sympathize if they know that he for some reason is a vet and was injured in the line of duty." (<u>Id.</u> at 17.) The court initially denied this motion, but later asked the parties address it again

15

1    because petitioner wore his Army jacket to court:

2            Court:  All right.  Counsel, I would also like you to readdress the issue of
             mentioning the Veterans Administration Hospital.  And the only reason I'm
3            bringing up that issue and I'm reopening it for further argument because I'm
             questioning whether or not noting that it's a Veterans Hospital is relevant at all.
4            And now thinking it's actually not relevant in light of the fact that your client
             came to court today for the first time wearing an Army jacket.
5
             Petitioner's Counsel:  It's the first time he's been in the courtroom with it, but it's
6            not the first time he's been in court with it.  On previous times he's worn it.  It's a
             little bit colder today.  And I don't think it's any effort on his part to influence
7            anyone by any means.  But I certainly didn't discuss it with him ahead of time.

8            Court: I one hundred percent believe that, Mr. Katcher.  In fact, I think it would
             have been your advice for him not to do that.
9
             Petitioner's Counsel: If I had thought about it, but I didn't know.  This is the
10           second time that he's worn it.

11   (Id. at 41-42.)

12           After hearing argument, the trial court ruled that no mention could be made

13   that petitioner had been to a Veterans Administration hospital:

14           Secondly, I am going to indicate to counsel that it's the Court's view that
             reference to Mr. Gibson going to the Veterans Administration hospital is also not
15           relevant in this case.  It's relevant that they were out and about and they had gone
             to see the doctor and that they had come home.  But it's not relevant that it was a
16           Veterans Administration Hospital.

17           I make that change in ruling for a couple of reasons.  Number one, because the
             Court observed the Defendant wearing a jacket that indicated Army on it this
18           morning.  Secondly, it is factually absolutely not relevant that the Defendant is a
             veteran.  It's not relevant for any purpose other than as a potential effort to
19           confuse and mislead the jury into being sympathetic towards this Defendant.

20           The issue as the Court is understanding it from both counsel is that this is a case
             where the jury is either going to believe that the Defendant assaulted his mother
21           and she broke her wrist, or they're going to find that it was an accident.

22           So the issue as to whether or not Mr. Gibson is a veteran or that he was going to
             the Veterans Hospital, in my view, under 352 is substantially more prejudicial
23           than it is probative.  So I'm going to also indicate that no mention be made that it
             was a Veterans Administration Hospital.  Okay?
24

25   (Id. at 42-43.)

26   ////

16

1    The record does not support petitioner's claim that the trial court ordered that he

2  could not wear his Army jacket to trial.  Instead, the record indicates that while the trial court

3  noted that it had observed petitioner wearing his Army jacket in the courtroom, it went on to rule

4  that the parties were not to mention that petitioner was at a Veterans Administration hospital.

5  The trial court did not rule that petitioner could not wear his Army jacket in the courtroom.

6  Petitioner does not cite any place in the record where the trial court ordered that he could not

7  wear his Army jacket in court.

8    The denial of this claim by the California courts was not an unreasonable

9  application of clearly established Supreme Court authority.  Accordingly, this claim should be

10  denied.

11    F.  Alleged Release of Suppressed Evidence

12    Petitioner alleges that suppressed evidence was improperly released to the jury.

13  The background to this claim is as follows.

14    The parties stipulated that the jury should be informed that the fact that

15  petitioner's mother was in a wheelchair had nothing to do with the incident involving petitioner.

16  (RT at 47.)  Petitioner's mother went on to testify that the fact that she was in a wheelchair had

17  nothing to do with petitioner's case or the incident involving petitioner.  (RT at 61.)

18    Later, prosecution witness Laura Bishop gave the following testimony:

19    Prosecutor: Was there – you said that he was leaning over and it looked like he
    was trying to help?
20
    Bishop: At first I thought he was going to reach down and grab her and help her
21    up because she was on the ground.  She needed help.  So I thought that's what she
    was probably calling for.  Then he kicked her.  It's like he swung his leg back and
22    kicked her.  And, you know, it could have been – something else could have been
    happening, but it sure looked like kicking to me.
23
    You know, I've thought about it a lot since then 'cause I thought, you know, I
24    don't want this man's life to be ruined.  But his mom's like immobilized since
    that day. So something happened.
25

26  (RT at 121.)

1    Petitioner now argues that Bishop's testimony that his mother was immobilized

2    after the incident should not have been admitted because it violated the stipulation that the fact

3    that his mother was in a wheelchair was unrelated to the incident.

4    The Supreme Court has reiterated the standards of review for a federal habeas

5    court.  Estelle v. McGuire, 502 U.S. 62 (1991).  In Estelle v. McGuire, the Supreme Court

6    reversed the decision of the Court of Appeals for the Ninth Circuit, which had granted federal

7    habeas relief.  The Court held that the Ninth Circuit erred in concluding that the evidence was

8    incorrectly admitted under state law since, "it is not the province of a federal habeas court to

9    reexamine state court determinations on state law questions."  Id. at 67-68.  The Court re-

10   emphasized that "federal habeas corpus relief does not lie for error in state law."  Id. at 67, citing

11   Lewis v. Jeffers, 497 U.S. 764 (1990), and Pulley v. Harris, 465 U.S. 37 (1984) (federal courts

12   may not grant habeas relief where the sole ground presented involves a perceived error of state

13   law, unless said error is so egregious as to amount to a violation of the Due Process or Equal

14   Protection clauses of the Fourteenth Amendment).

15   The Supreme Court further noted that the standard of review for a federal habeas

16   court "is limited to deciding whether a conviction violated the Constitution, laws, or treaties of

17   the United States (citations omitted)."  Id. at 68.  The Court also stated that in order for error in

18   the state trial proceedings to reach the level of a due process violation, the error had to be one

19   involving "fundamental fairness," Id. at 73, and that "we 'have defined the category of

20   infractions that violate "fundamental fairness" very narrowly.'"  Id. at 73.  Habeas review does

21   not lie in a claim that the state court erroneously allowed or excluded particular evidence

22   according to state evidentiary rules.  Jammal v. Van de Kamp, 926 F.2d 918, 919 (9th Cir. 1991).

23   As more recently re-emphasized by the Supreme Court, "'a mere error of state law ... is not a

24   denial of due process.'"  Rivera v. Illinois, 556 U.S. 148, 158 (2009) (quoting Engle v. Isaac, 456

25   107, 121, n.21 (1982)).

26   ////

1    While Bishop's testimony may have contradicted the testimony of petitioner's

2 mother regarding her use of the wheelchair, the admission of Bishop's testimony did not violate

3 fundamental fairness. The evidence against petitioner was strong.  For this reason, it is not likely

4 that Bishop's testimony had an impact on the verdict.

5    The denial of this claim by the California courts was not an unreasonable

6 application of clearly established Supreme Court authority.  Accordingly, this claim should be

7 denied.

8    G.  Actual Innocence

9    Petitioner argues that he is innocent of violating California Penal Code §

10 368(b)(1) because this section requires that the victim be a dependent and that the perpetrator be

11 a caretaker.  Petitioner argues that his mother was not a dependent and he was not a caretaker.

12    Respondent argues that the instant claim is procedurally barred.  Petitioner filed a

13 habeas corpus petition in the California Supreme Court raising only this claim.  (Respondent's

14 Lodged Document No. 19.)  The California Supreme Court denied this petition by order citing In

15 re Robbins, 18 Cal.4th 770, 780 (1998), People v. Duvall, 9 Cal.4th 464, 474 (1995), and In re

16 Swain, 34 Cal.2d 300, 304 (1949).  (Id.)  Because this petition filed in the California Supreme

17 Court raised only this one claim, it is clear that all three of the cases cited by the California

18 Supreme Court applied to this claim.

19    The citation to Robbins indicates that the California Supreme Court found the

20 petition untimely.  Robbins, 18 Cal.4th at 780.   California's timeliness rule is independent and

21 adequate.  Bennett v.  Mueller, 322 F.3d 573, 581 (9th Cir. 2003) (independent); Walker v.

22 Martin, 131 S. Ct. 1120, 1131 (2011) (adequate).

23    Petitioner's actual innocence claim is procedurally defaulted unless he can show

24 cause for the default and actual prejudice as a result of the alleged violation of federal law or that

25 failure to consider the claims will result in a fundamental miscarriage of justice.  See Coleman,

26 501 U.S. at 750.

1    As noted by respondent in the supplemental answer, California Penal Code §

2  368(b)(1) does not require that the victim be a dependent or that the perpetrator be a caretaker:

3    Any person who knows or reasonably should know that a person is an elder or
     dependent adult and who, under circumstances or conditions likely to produce
4    great bodily harm or death, willfully causes or permits any elder or dependent
     adult to suffer, or inflicts thereon unjustifiable physical pain or mental suffering,
5    or having the care or custody of any elder or dependent adult, willfully causes or
     permits the person or health of the elder or dependent adult to be injured, or
6    willfully causes or permits the elder or dependent adult to be placed in a situation
     in which his or her person or health is endangered, is punishable by imprisonment
7    in a county jail not exceeding one year, or by a fine not to exceed six thousand
     dollars ($6,000), or by both that fine and imprisonment, or by imprisonment in the
8    state prison for two, three, or four years.

9  Cal. Penal Code § 368(b)(1)

10    Because petitioner's actual innocence claim is clearly without merit, the

11  undersigned finds that he has failed to demonstrate prejudice or a miscarriage of justice if his

12  claim is not reviewed.

13    Accordingly, this claim should be denied on grounds that it is procedurally barred.

14    H.  <u>Unconstitutional Sentence</u>

15    Petitioner argues that his eight year sentence is unconstitutionally excessive based

16  on the minor injuries suffered by his mother and the nature of the crime.  Petitioner was

17  sentenced to the mid-term of three years for elder abuse (Cal. Penal Code § 368(b)(1)) and a

18  consecutive five year enhancement because his mother suffered great bodily injury.  (Cal. Penal

19  Code § 368(b)(2)).  Petitioner's sentences for assault likely to produce great bodily injury (Cal.

20  Penal Code § 245(a)(1)) and great bodily injury inflicted on a victim seventy years of age (Cal.

21  Penal Code § 12022.7(c) were stayed.

22    In denying petitioner's habeas corpus petition, the Sacramento County Superior

23  Court issued a reasoned decision addressing this claim:

24    Petitioner also contends that this was his first felony conviction and that an eight-
     year term is excessive.  Petitioner was convicted by jury, and his prison terms are
25    prescribed by statute.  The sentence is not excessive.

26  (Respondent's Lodged Document No. 11.)

1        A criminal sentence that is not proportionate to the crime for which the defendant

2  was convicted violates the Eighth Amendment.  <u>Solem v. Helm</u>, 463 U.S. 277, 303 (1983).  Yet,

3  "[o]utside the context of capital punishment, successful challenges to the proportionality of

4  particular sentences [are] exceedingly rare."  <u>Id.</u> at 289–90.  Eighth Amendment jurisprudence

5  "gives legislatures broad discretion to fashion a sentence that fits within the scope of the

6  proportionality principle—the precise contours of which are unclear."  <u>Lockyer v. Andrade</u>, 538

7  U.S. 63, 76 (2003) (internal quotations and citations omitted).  "The Eighth Amendment does not

8  require strict proportionality between crime and sentence.  Rather, it forbids only extreme

9  sentences that are 'grossly disproportionate' to the crime."  <u>Ewing v. California</u>, 538 U.S. 11, 23

10  (2003) (quoting <u>Harmelin v. Michigan</u>, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring)).

11  Where it cannot be said as a threshold matter that the crime committed and the sentence imposed

12  are grossly disproportionate, it is not appropriate to engage in a comparative analysis of the

13  sentence received by the defendant to those received by other defendants for other crimes.  <u>See</u>

14  <u>United States v. Harris</u>, 154 F.3d 1082, 1084 (9th Cir. 1998).

15        Petitioner's sentence, prescribed by statute, was not grossly disproportionate to the

16  crimes committed.  For this reason, the denial of this claim by the Superior Court was not an

17  unreasonable application of clearly established Supreme Court authority.  Accordingly, this claim

18  should be denied.

19        Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for

20  a writ of habeas corpus be denied.

21        These findings and recommendations are submitted to the United States District

22  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-

23  one days after being served with these findings and recommendations, any party may file written

24  objections with the court and serve a copy on all parties.  Such a document should be captioned

25  "Objections to Magistrate Judge's Findings and Recommendations."  If petitioner files

26  objections, he shall also address whether a certificate of appealability should issue and, if so, why

and as to which issues.  A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(3).  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:  September 26, 2012

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

gib555.157

22